Emily Cooper, OSB # 182254
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
ecooper@droregon.org
*Attorney for Amicus*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**UNITED STATES OF AMERICA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**LAWRENCE COLLINS,**<br>**Defendant.** | **Case No. 16-cr-00352-HZ-02**<br><br>**MOTION FOR LEAVE TO FILE AN *AMICUS CURIAE* BRIEF** |

Disability Rights Oregon (hereinafter, "DRO") respectfully moves, pursuant to both the Court's inherent authority and Local Rule 7.1, to file an *amicus curiae* brief regarding the Americans with Disabilities Act's "integration mandate" as it applies to federal competency restoration services. This motion is supported by the following declaration of counsel and memorandum. A copy of the proposed brief is attached as Exhibit A to this Motion.

## I. LR 7-1 CERTIFICATION

Counsel for DRO, Emily Cooper, hereby certifies that she has conferred with counsels for the parties. As of today's filing date, neither Plaintiff United States of America nor Defendant Lawrence Collins oppose DRO's appearance as *amicus*. On October 2, 2017, this Court indicated in open court its willingness to permit the filing of an *amicus* brief in this case. The parties agreed to the proposed briefing schedule including the appearance and filing of a DRO *amicus* brief.

## II. MEMORANDUM IN SUPPORT OF MOTION FOR *AMICUS CURIAE* STATUS

The parties in this matter appear to disagree regarding the appropriate placement for Defendant Lawrence Collins to be sent for federal competency restoration services – Plaintiff seeks placement in an out-of-state Bureau of Prison's facility and Defendant seeks community-based services. DRO seeks to present *amicus* briefing and information regarding the liberty interests of people with disabilities who are charged with crimes but, due to their disability, are found to be unable to aid and assist their defense. DRO has significant experience in advocating for individuals unable to aid and assist in their defense, including seeking less restrictive placements and limits on how long they can remain incarcerated due to the harms caused to individuals with disabilities in jail or other environments designed for punishment not treatment.

DRO respectfully requests that it be allowed the opportunity to present any briefing requested by the Court in the same manner as the parties. Disability Rights Oregon also requests it be permitted to participate in any oral arguments, if so requested by this Court or the parties.

### A. This Court's Broad Discretion to Appoint *Amicus Curiae*

All federal district courts have the authority and broad discretion to accept *amicus* briefs to assist the court in its proceedings:

> "The Ninth Circuit has held the district court has broad discretion to appoint *amicus*'" and that "'[t]he classic role of *amicus curiae* . . . [is to assist] in a case of general public interest, supplementing the efforts of counsel, and drawing the court's attention to law that escaped consideration.'"

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv*., CV 05-23-RE, 2005 WL 787602 (D. Or. Apr. 8, 2005) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982); *Miller-Wohl Co. v. Commissioner of Labor & Industry*, 694 F.2d 203, 204 (9th Cir. 1982)); *see also Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008).

.



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

Courts generally exercise liberality in permitting an *amicus curiae* to file a brief in a pending matter. There are no strict prerequisites that must be established to qualify for *amicus* status; a prospective *amicus* must merely make a showing that their participation is useful to otherwise desirable by the court. *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982).

The role of *amici* is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, N.A.A.C.P. v. Town of Harrison*, N.J., 940 F.2d 792, 808 (3d Cir. 1991).

The depth and breadth of DRO's over four decades of experience in addressing rights protections for incarcerated individuals with mental illness charged with crimes ensures that DRO's participation as an *amicus* in this case will lend a vital perspective. This case is also of critical interest to DRO's constituency, which includes many individuals found incompetent to aid and assist in their defense but who may lack the ability to voice the issues impacting them in the criminal justice system. This perspective coupled with the Court's broad authority supports the Court's exercise of its discretion to accept DRO's proposed *amicus curiae* brief.

**B. The Proposed Amicus Brief Provides Supplemental Analysis of the Federal "Integration Mandate" and Aid and Assist Constitutional Litigation**

DRO's position as a federally-mandated Protection & Advocacy agency for Oregon places it in a uniquely qualified position to speak to Defendant's rights and needs in the context of his disability. DRO provides protection and advocacy services to Oregonians with disabilities pursuant to the Developmental Disabilities Assistance and Bill of Rights ("DD") Act, 42 U.S.C. § 15041, *et seq*., the Protection and Advocacy for Individuals with Mental Illnesses ("PAIMI")



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

Act, 42 U.S.C. § 10801, *et seq*., the Protection and Advocacy for Individual Rights ("PAIR") Act, 29 U.S.C. § 794e, and the regulations promulgated thereto, and ORS 192.517.

DRO has worked for over forty years to transform systems, policies, and practices to give more people with disabilities the equal opportunity to participate in their communities by advancing the principles in the American's with Disabilities Act's "integration mandate." DRO has conducted outreach and monitoring of treatment and correctional facilities to conduct investigations, provide information and training, and ensure compliance with constitutionally protected liberty interests. DRO collaborates closely with the Oregon State Hospital, the Department of Corrections, county jail administrators, and county outpatient restoration providers as well as other institutions to monitor inpatient and community-based forensic programs. DRO also uses the information and stories it has obtained in its outreach, monitoring, and advocacy to go to educate policy makers so that there can be improvements in the forensic justice system.

DRO's experience extends into litigation seeking injunctive relief on behalf of a class of individuals deemed incompetent but languishing in jail for restoration services from Oregon State Hospital. *See Oregon Advocacy Center v. Mink*, 322 F. 3d 1101, 1121 (9th Cir. 2003)(then, DRO's name was the "Oregon Advocacy Center."). DRO's counsel, Emily Cooper, was also the lead attorney in the *Trueblood* litigation resulting in a court order establishing Due Process protections for aid and assist defendants and forbidding the government from infringing certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Trueblood v. Wash. State Dep't of Soc. & Health Services*, No. 15-35462 (9th Cir. August 2015); *see also Trueblood v. Wash. State Dep't of Soc. & Health Services*, 822 F.3d 1037 (9th Cir. 2016).



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

In short, DRO has the keen knowledge, experience and interest in the issues raised by the parties regarding the appropriate placement for Defendant Lawrence Collins to receive competency restoration services in light of his disability and the circumstances regarding his current community placement.

## III. CONCLUSION

For the foregoing reasons, and so that the Court possesses all relevant information it needs, counsel for proposed *Amicus Curiae* Disability Rights Oregon respectfully requests this motion for leave to file an *amicus* be granted. A draft proposed order accompanies this motion as Exhibit B.

DATED: October 19, 2018

Respectfully submitted,

DISABILITY RIGHTS OREGON

/s/ Emily Cooper

Emily Cooper, OSB #182254
ecooper@droregon.org



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

# EXHIBIT A

***************************

**Case No. 3:16-cr-00352-HZ-02**

*****************************

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**UNITED STATES OF AMERICA**

UNITED STATES OF AMERICA,
*Plaintiff*,

v.

LAWRENCE COLLINS,
*Defendant.*

**BRIEF OF AMICUS**
**DISABILITY RIGHTS OREGON**

---

Emily Cooper, OSB # 182254
Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, Oregon 97205
(503) 243-2081
ecooper@droregon.org

*Attorney for Amicus*

# TABLE OF CONTENTS

**I. INTERESTS AND IDENTITY OF AMICUS DRO** ........................................................ 1

**II. INTRODUCTION & SUMMARY OF ARGUMENT** ..................................................... 1

**III. BUREAU OF PRISONS BACKGROUND** ........................................................................ 3

**IV. ARGUMENT** ........................................................................................................................ 4

**A. Mandatory Incarceration of Aid and Assist Defendants Violates the Federal Integration Mandate.** ..................................................................................... 4

1. The History of Unnecessary Institutionalization and Oregon's Integration Efforts. ....... 4

2. Section 504 Prohibits Unnecessary Segregation and Requires Consideration of the Less Restrictive Environment........................................................................................... 6

3. Unjustified Isolation Is Discriminatory and Violates the Americans with Disabilities Act ......................................................................................................................... 8

4. Individuals Determined Incompetent to Stand Trial Are Members of a Protected Class and Can Be Served in Community-Based Restoration Treatment Programs. ....................... 10

5. Like Other Programs and Services, Competency Restoration Services Must Be Provided in an Integrated Setting. ........................................................................... 11

**B. Unwarranted and Indefinite Confinement of a Person with Developmental Disabilities Violates Due Process Protections** .................................................13

1. Due Process Protections Apply to Commitment Proceedings and § 4241 .................... 13

2. The Government Lacks a Compelling Interest to Deprive Mr. Collins of Liberty........ 18

3. Mr. Collins Will Suffer Irreparable Harm if He is Incarcerated ................................... 18

**IX. CONCLUSION** ...................................................................................................... 19



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

# TABLE OF AUTHORITIES

Statutes

18 U.S.C. § 4241 .......... passim

18 U.S.C.A. § 4246 .......... 19

28 C.F.R. § 39.102 .......... 12

28 C.F.R. § 39.103 .......... 12

29 U.S.C. § 794 .......... 3

42 U.S.C. § 10801 .......... 3

42 U.S.C. § 12101 .......... 7

42 U.S.C. § 12102 .......... 12

42 U.S.C. § 15041 .......... 3

Cases

*A.R. v. Dudek*, 12-cv60460 (S.D. Fla. 2012) .......... 13

*Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996)* .......... 20

*City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 461 (1985) .......... 6

*Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972) .......... 4, 16

*Katie A., et. al. v. Douglas, et. al.,* CV-02-05662 (C.D. Cal. 2011 .......... 13

*Lane v. Brown*, 3:12-cv-00138-ST (D. Or 2016) .......... 13

*Lopez v. Heckler*, 713 F.2d 1432 (9th Cir. 1983) .......... 21

*Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 778 (9th Cir. 2014) .......... 16, 20

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) .......... 20

*Ohlinger v. Watson*, 652 F.2d 775 (9th Cir. 1980) .......... 4, 16

*Oregon Advocacy Center v. Mink*, 322 F. 3d 1101, 1121 (9th Cir. 2003) .......... 16

*Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470 .......... 4

*Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) .......... 15



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

*Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2002) ....................20

*Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003)....................13

*TR v. Dreyfus*, 2:09-cv-01677-TSZ (W.D. Wash. 2009) ....................13

*Trueblood v. Wash. State Dep't of Soc. & Health Servs*., 822 F.3d 1037, 1040 (9th Cir. 2016) .............16

*U.S. v. Rudisill*, 2 F.Supp.2d 46 (D.C. 1998) ....................16

*United States v. Donofrio*, 896 F.2d 1301 (11th Cir. 1990) ....................17, 19

*United States v. Marion County Nursing Home District*, 2:13-cv-00026 (E.D. Mo. 2013)....................13

*United States v. New York*, 13-cv-4165 (E.D.N.Y. 2013) ....................13

*United States v. Pardue*, 354 F.Supp. 1377 (D. Conn. 1973) ....................16

*United States v. Shawar*, 865 F.2d 856 (7th Cir. 1989) ....................17, 18

*United States v. Stanford*, 769 F.Supp.2d 1083 (S.D. Tex. 2011) ....................17, 19

*United States v. Strong*, 489 F.3d 1055 (9th Cir. 2007)....................17, 19

*Vitek v. Jones*, 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980)....................16

Treatises

Graziani, C., Guzmán, M., Mahometa, M., Shafer, A., *Texas outpatient competency restoration programs* (2015), p. 17. Hogg Foundation for Mental Health ....................14

S.A. Larson, Eschenbacher, H.J., Anderson, L.L., Taylor, B., Pettingell, S., Hewitt, A., Sowers, M., & Bourne, M.L. (2018), *In-home and residential long-term supports and services for persons with intellectual or developmental disabilities: Status and trends through 2016*.................... 7

Samuel R. Bagenstos, *The Past and Future of Deinstitutionalization Litigation*, 34 Cardozo L. Rev. 1, 7–8 (2012). .................... 7

*Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C* .................... 1

W. Neil Gowenstein, Lynda E. Frost, Danielle W. Speelman & Danielle E. Therson, *Lookin' for Beds in All the Wrong Places: Outpatient Competency Restoration as a Promising Approach to Modern Challenges*, 22 Psychol. Pub. Pol'y Journal 293, 299 (2016). ....................14, 20



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

## INTERESTS AND IDENTITY OF AMICUS DRO

This case implicates the rights of individuals with intellectual disabilities under the Due Process Clause of the Fifth Amendment, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. As Oregon's federally-mandated Protection and Advocacy agency, Disability Rights Oregon ("DRO") promotes and protects the rights to independence, justice, and equality of individuals with disabilities. 42 U.S.C. § 10801 *et seq*.; 42 U.S.C. § 15041 *et seq*. In submitting this brief in support of Defendant, Amicus DRO seeks to advance the rights of Oregonians with intellectual disabilities deemed incompetent to stand trial to access the most integrated setting during the federal competency restoration process.

## I. INTRODUCTION & SUMMARY OF ARGUMENT

Mr. Collins, who has repeatedly been found not competent to stand trial due to the severity of his intellectual disability, currently faces the possibility of being removed from his family, home, state, and community support services in order to be detained in a federal Bureau of Prison facility thousands of miles away. Placing Mr. Collins in a correctional facility violates both the federal integration mandate and the Due Process Clause.

There is a long and sordid history of segregating people with disabilities in institutions. In 1973, Congress passed Section 504 of the Rehabilitation Act ("Section 504"), the first civil rights law enacted in the United States prohibiting discrimination against people with disabilities. Section 504 requires federal agencies to conduct programs and activities in the most integrated setting. This "integration mandate" was later buttressed by the Americans with Disabilities Act ("ADA") of 1990, as well as a significant United States Supreme Court decision.

Upon passage of the ADA, the Department of Justice ("DOJ") issued "coordination regulations" mirroring Section 504's language, stating: "A public entity shall administer


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 8 C.F.R. § 41.51(d). These regulations make the integration mandate of Section 504 virtually identical to the ADA. The Supreme Court in *Olmstead v. L.C. ex.rel. Zimring*, 527 U.S. 581 (1999), interpreted these provisions of the ADA and Section 504 to mean that "[u]njustified isolation [] is properly regarded as discrimination based on disability." *Id.* at 597. The forty-five-year-old integration mandate now applies across many federally funded programs and services to enforce the rights of individuals with disabilities to be free from undue segregation and institutionalization. Here, Mr. Collins has been diagnosed with an intellectual disability. He has been found unable to read, unable to understand the nature of the charges against him, and has repeatedly been found not competent to stand trial. He is also facing removal from his family, home, and community support services, to detention in a Bureau of Prison facility thousands of miles away.

18 U.S.C. § 4241(d), which states that a federal court must commit a defendant found mentally incompetent to stand trial to the custody of the Attorney General for "hospitalization" in a "suitable facility," can and must be harmonized with the mandate to administer federal programs and activities in the most integrated setting. Unjustified detention in a Bureau of Prisons facility also undermines freedom from incarceration pursuant to the paradigmatic liberty interest under the Due Process clause. *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). Further, persons committed solely on the basis of their mental incapacity have a constitutional right to receive such individualized treatment as will give each of them a realistic opportunity to be cured or to improve their mental condition. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980); *see also Jackson v. Indiana*, 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). Here, depriving Mr. Collins of his liberty is unjustified. It is unclear



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

whether an individualized assessment has been conducted to determine whether confinement in a Bureau of Prisons facility would provide Mr. Collins with the opportunity to improve his intellectual disability, or whether there is even a substantial probability that he will regain capacity in the future. The government has presented no legitimate basis that a more restrictive setting would be more likely to restore competency. Ultimately, the available community restoration in Oregon satisfies both the government's interest to restore Mr. Collins to competency and Mr. Collins' liberty interest.

## II. BUREAU OF PRISONS BACKGROUND

The Attorney General plans to remand Mr. Collins to an out-of-state Federal Medical Center with the Bureau of Prisons. The Bureau of Prisons operates five Federal Medical Centers (FMCs), located in North Carolina, Texas, Massachusetts, Kentucky and, New York.[1] FMCs are maximum security inpatient medical institutions in prison complexes. Critically, FMC's do not publish information regarding whether their restoration services are tailored to people with intellectual disabilities. For example, based on FMC Butner Admissions and Orientation Handbook, failure to follow the rules of the facility could result in further disciplinary action including being housed in segregation.[2] However, there is no reference in this handbook regarding Mr. Collins' right to receive accommodations or how this facility modifies their policies or procedures for inmates whose disabilities may limit their ability to follow rules, and who may be placed in segregation due to this failure to comply. Similarly, the 2014 Bureau of Prisons Program Statement is also silent regarding evaluating individuals with intellectual disabilities.[3] This lack of individualized treatment suggests this placement may not meet the

[1] The Bureau of Prison locations are available at https://www.bop.gov/locations/list.jsp.
[2] https://www.bop.gov/locations/institutions/buh/BUH_aohandbook.pdf at 45.
[3] https://www.bop.gov/policy/progstat/5070_012.pdf



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

legitimate interests of the government to restore competency, but instead may impermissibly punish Mr. Collins who has merely been charged with, and not convicted of, tax fraud.

## III. ARGUMENT

### A. Mandatory Incarceration of Aid and Assist Defendants Violates the Federal Integration Mandate.

1. The History of Unnecessary Institutionalization and Oregon's Integration Efforts.

There has been a sea change in the laws, policies, and views in the United States leading society away from mass institutionalization to community-based services for people living with disabilities. In the past, government wielded the law as a sword against people with disabilities to justify segregation. Today, the ADA and Section 504 provide a shield. A review of cases and the painful history of purposeful segregation of individuals with disabilities underlines the critical importance of the integration mandate and current efforts to effectuate its requirements.

Justice Thurgood Marshall eloquently illuminated the fact that people with developmental disabilities have been "subject to a lengthy and tragic history of segregation and discrimination that can only be called grotesque." *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 461 (1985). Justice Marshall went on to recount the discriminatory animus leading to massive institutionalization of people with intellectual disabilities:

> "During much of the 19th century, mental retardation was viewed as neither curable nor dangerous and the retarded were largely left to their own devices. By the latter part of the century and during the first decades of the new one, however, social views of the retarded underwent a radical transformation. Fueled by the rising tide of Social Darwinism, the 'science' of eugenics, and the extreme xenophobia of those years, leading medical authorities and others began to portray the 'feeble-minded' as a 'menace to society and civilization... responsible in a large degree for many, if not all, of our social problems.'"

*Id.* "Prejudice, once let loose, is not easily cabined" and, as Justice Marshall explained, "lengthy and continuing isolation of the retarded perpetuate[s] the ignorance, irrational fears, and stereotyping that long ha[s] plagued them." *Id.* at 464. It is this animus and discriminatory



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

segregation that led to passage of the Americans with Disabilities Act. *See* 42 U.S.C. § 12101(2).

The numbers of institutionalized people with disabilities continued to grow until deinstitutionalization efforts culminated in a shift in federal and state policy from mass institutionalization to community-based treatment. In 1967, the number of people with intellectual disabilities in state-operated institutions peaked at nearly 200,000.[4] Since 1967, states have closed hundreds of their institutions and downsized many others.[5] Between 1980 and 2009, 24 states and the District of Columbia reduced the population of people with intellectual disabilities in their large institutions by more than 80%.[6] These drastic reductions were due to the positive effect of deinstitutionalization of large Immediate Care Facilities for the Mentally Retarded (ICFMRs).[7] Over forty years ago, Oregon emerged as a leader in the integration movement and is now one of only four states to completely close its ICFMRs.[8] This resulted in a dramatic reduction of Oregonians with intellectual disabilities being institutionalized; starting at twenty-two thousand in 1977 and dropping to only forty-seven in 2016.[9] Today, over eighteen thousand Oregonians with intellectual disabilities live within the community.[10]

Oregon has made similar efforts regarding Oregonians with mental illness. In 2016, Oregon entered into the Oregon Performance Plan ("OPP") with the DOJ to enforce the 2009 Supreme Court's *Olmstead* Decision.[11] As noted in the OPP's first recital, "This Plan is intended to better provide adults in Oregon with serious and persistent mental illness with community

---

[4] Samuel R. Bagenstos, *The Past and Future of Deinstitutionalization Litigation*, 34 Cardozo L. Rev. 1, 7–8 (2012).
[5] *Id.*
[6] *Id.*
[7] *Id.* at 8.
[8] *See* S.A. Larson, Eschenbacher, H.J., Anderson, L.L., Taylor, B., Pettingell, S., Hewitt, A., Sowers, M., & Bourne, M.L. (2018), *In-home and residential long-term supports and services for persons with intellectual or developmental disabilities: Status and trends through 2016*, p.11 and 131.
[9] *Id.* at 196
[10] *Id.*
[11] Available at https://www.oregon.gov/oha/HSD/BHP/Oregon%20Performance%20Plan/Oregon-Performance-Plan.pdf


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

services that will assist them to live in the most integrated setting appropriate to their needs, achieve positive outcomes, and prevent their unnecessary institutionalization."[12] This integration commitment extends to individuals charged with crimes. *See* ORS 161.365 and 370. In 2018, Oregon passed community restoration legislation and this was the promulgated purpose:

> Oregon Revised Statutes (ORS) 161.365 and 161.370 recognize that not all criminal defendants who lack fitness to proceed (commonly known as Aid and Assist defendants) need to be committed to the State Hospital or remain in jail, but instead should be served in the least restrictive environment that is clinically indicated.

OAR 309-088-0105. DRO respectfully urges this Court to consider both the efforts in this county to move away from unnecessary segregation and Oregon's leadership in enforcing the integration mandate by serving Aid and Assist defendants in community restoration programs.

2. Section 504 Prohibits Unnecessary Segregation and Requires Consideration of the Less Restrictive Environment

Section 504 of the Rehabilitation Act ("Section 504") requires agencies to conduct their programs and activities in the most integrated setting appropriate for the individual defendant with a disability. 29 U.S.C. § 794. Section 504 also requires that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely, by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination." 29 U.S.C. § 794(a). Section 504's mandate applies to "*any* program or activity receiving Federal financial assistance or under *any* program or activity conducted by *any* Executive agency or by the United States Postal Service." *Id.* (emphasis added).

In 1976, President Ford issued an executive order instructing the Department of Health, Education, and Welfare (HEW) to issue regulations implementing Section 504 to "establish standards for determining who are handicapped individuals and guidelines for determining what

[12] *Id.*



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

are discriminatory practices, within the meaning of section 504." Exec. Order No. 11914, 41 Fed. Reg. 17,871 (Apr. 28, 1976). The President also instructing every federal agency that distributes federal funds to "issue rules, regulations, and directives, consistent with the standards and procedures established by HEW. "*Id.* In 1978, HEW issued coordination regulations. 53 Fed. Reg. 2138 (Jan. 13, 1978). The preamble clarified that "separate" treatment of individuals with disabilities "can be permitted *only* where necessary to ensure equal opportunity and truly effective benefits and services." *Id.* (emphasis added). In 1980, the DOJ likewise promulgated Section 504 regulations to include the same integration requirement, requiring that DOJ "shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 39.130(d).

To comply with Section 504's integration mandate, federal agencies are required to make reasonable modification of their policies, procedures or practices when necessary to avoid discrimination. *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (recognizing that "to assure meaningful access [under Section 504], reasonable accommodations in the grantee's program or benefit may have to be made"). In *Franco-Gonzales v. Holder*, plaintiffs requesting a Temporary Restraining Order were aliens with serious mental illnesses that faced going through twelve immigration proceedings (including detention and removal) without appointed counsel. 767 F.Supp.2d 1034, 1058 (C.D. Cal. 2010). There, the court applied the DOJ's 504 regulations and found that the plaintiffs had qualifying disabilities and were entitled to a Qualified Representative (counsel) in their immigration proceedings as a reasonable accommodation under Section 504. *Id.*

As in *Franco-Gonzales*, here, the Attorney General and the Bureau of Prisons are required to make reasonable accommodations to their delivery of competency restoration



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

services in order to comply with Section 504's integration mandate and DOJ's own regulations. When individuals with disabilities are qualified to receive services in the community, their mandatory detention in a prison thousands of miles from their home does not constitute "the most integrated setting appropriate to the needs" of those individuals. *See* 28 C.F.R. § 35.130 (d). Here, the government has not established that the competency services provided by the Bureau of Prisons meet these standards nor why the available outpatient restoration program is not appropriate to serve both the government and Mr. Collins' interests.

3. Unjustified Isolation Is Discriminatory and Violates the Americans with Disabilities Act

The Supreme Court has upheld the ADA's Integration Mandate. In 1995, two residents of Georgia institutions sued the state, claiming they had the right to receive care in the most integrated setting appropriate and that their unnecessary institutionalization was discriminatory in violation of Title II of the ADA. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). The *Olmstead* Court ruled that "[u]njustified isolation [] is properly regarded as discrimination based on disability." *Id.* at 597. In so finding, the Supreme Court considered whether Title II's "proscription of discrimination may require placement of persons with mental disabilities in community settings rather than in institutions" and concluded that it does in certain circumstances. *Id*. at 587. The Court found this, in part, because "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id.* at 601. The Court went on to note that an individual assessment is generally required to determine appropriate care needs. *Id.* at 602.

The *Olmstead* Court went on to hold that states must "provide community-based treatment for persons with mental disabilities when the State's treatment professionals determine


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with mental disabilities." *Id.* at 607. The DOJ clarified in subsequent technical guidance to the States that integrated settings "are located in mainstream society; offer access to community activities and opportunities at times, frequencies and with persons of an individual's choosing."[13]

The Supreme Court's reasoning in *Olmstead* applies equally to executive agencies as to programs and activities conducted with federal financial assistance under Section 504. *See Sanchez v. Johnson*, 416 F.3d 1051, 1063 (9th Cir. 2005)(concluding the integration regulations enacted pursuant to the ADA and Section 504 are both "co-extensive" and express a clear policy preference in favor of integrating developmentally disabled persons into the community over institutional care). Congress explicitly modeled the ADA's Title II on Section 504 in their basic prohibitions on discrimination and in the available remedies, procedures, and rights. *Compare* 29 U.S.C. § 794(a) to 42 U.S.C. § 12132; 42 U.S.C. § 12133.

Congress directed the Attorney General to promulgate Title II implementing regulations. In their guidance, DOJ noted; "[c]laims under the ADA and the Rehabilitation Act are generally treated identically."[14] George W. Bush issued an Executive Order titled "Community Based Alternatives for Individuals with Disabilities," directing six federal agencies to "evaluate the policies, programs, statutes, and regulations . . . to determine whether any should be revised . . . to improve the availability of community-based services for qualified individuals with disabilities." Exec. Order No. 13,217, 66 Fed. Reg. 33,155 (June 18, 2001). Given this clear

[13] *Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and Olmstead v. L.C.*, p. 3, available at https://www.ada.gov/olmstead/q&a_olmstead.pdf
[14] *Statement of the Department of Justice, supra*, at n.4


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

guidance from all three branches of government, it is unclear why, here, the Attorney General is strictly applying the federal commitment statue to prohibit the government from considering less restrictive alternatives that clinicians have already stated meet Mr. Collins' needs.

4. Individuals Determined Incompetent to Stand Trial Are Members of a Protected Class and Can Be Served in Community-Based Restoration Treatment Programs.

Competency restoration services fall within DOJ's programs and activities, all of which are subject to DOJ's Section 504 implementing regulations. See 28 C.F.R. § 39.102 ("applies to *all* programs or activities conducted by the agency") (emphasis added). Most, if not all, individuals found incompetent to stand trial under the procedures of 18 U.S.C. § 4241 will satisfy Section 504's legal definition of an individual with a disability because they have a mental impairment that substantially limits at least one major life activity. *See* 28 C.F.R. § 39.103.

To be found not competent, an individual must be "presently suffering from mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). This implicates, at a minimum, the major life activities of thinking, concentrating, and communicating. *See* 42 U.S.C. § 12102(2)(A) (ADA definition of "major life activity"). Mandatory detention in a FMC for every individual found not competent violates Section 504's integration mandate by precluding individualized assessment and placement in the most integrated setting in which their needs can be met.

The availability of state community-based competency restoration services followed by the insistence on institutional placements results in unjustified segregation of Mr. Collins and others like him. Detention at a medical institution of a prison complex is not in mainstream society; does not offer access to community activities and opportunities at times, frequencies and


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

with persons of an individual's choosing; does not afford individuals choice in their daily life activities; and, does not provide individuals with disabilities the opportunity to interact with non-disabled persons, except for prison staff/medical providers. Instead, this deprivation of his liberty will cause Mr. Collins to lose all established supports, placing him at risk of recidivism and harming his ability to reintegrate following the period of his restoration services.

5. Like Other Programs and Services, Competency Restoration Services Must Be Provided in an Integrated Setting.

Courts have extended the integration mandate's reach beyond the programs and services at issue in *Olmstead*. The integration mandate has been applied across a variety of programs and services to enforce the rights of individuals with disabilities to be free from undue segregation and institutionalization, including in: education (*United States. v. Georgia*, 1:17-cv-03999 (N.D. Ga. 2017) (ongoing)); Medicaid services, *A.R. v. Dudek*, 12-cv60460 (S.D. Fla. 2012) (ongoing)); children's services (*Katie A., et. al. v. Douglas, et. al.*, CV-02-05662 (C.D. Cal. 2011); *see also TR v. Dreyfus*, 2:09-cv-01677-TSZ (W.D. Wash. 2009)(ongoing);); nursing facilities (*United States v. Marion County Nursing Home District*, 2:13-cv-00026 (E.D. Mo. 2013)); board and care/adult care facilities (*United States v. New York*, 13-cv-4165 (E.D.N.Y. 2013)); and sheltered workshops/segregated day services (*Lane v. Brown*, 3:12-cv-00138-ST (D. Or 2016).

Community-based restoration to competency program options must also be made available to individuals as appropriate to meet their care needs. *See Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir. 2003) (remanding to district court holding "the denial of community-based long term care for 'medically needy' disabled persons violates the ADA unless the [Washington Department of Social and Health Services] can demonstrate that extending eligibility to these persons would fundamentally alter its Medicaid programs")


Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

Oregon, as well as twenty-eight other states, allows for community-based and outpatient competency restoration as a treatment location. [15] These outpatient competency restoration programs have yielded several positive outcomes. In a 2016 study of about thirteen outpatient competency restoration programs, rates of competency restoration averaged 70%.[16] A 2015 Texas survey revealed a 75% restoration rate for its outpatient program.[17] The Texas 75% restoration rate was the same success rate as the state-run psychiatric hospitals.[18] Restoration rates in community restoration programs are also higher than corrections-based programs that averaged at 45%. [19] The average rate of negative incidences in community programs—arrests, elopements, acute decompensations, and serious rule violations—was 16.7% across the states.[20]

Oregon courts have discretion to order an evaluation to "determine whether services and supervision necessary to safely restore the defendant's fitness to proceed are available in the

[15] Arizona: Ariz. Rev. Stat. Ann. § 13-4512 (2005) ("court shall select the least restrictive treatment alternative after considering . . . the defendant's willingness to submit to outpatient competent restoration treatment as a condition of pretrial release"); Arkansas: Ark. Code Ann. § 5-2-310 (2017); California: Cal. Penal Code § 1370 (2018) (court has the discretion to order a defendant in community-based residential treatment, "on outpatient status"); Colorado: Colo. Rev. Stat. Ann. § 16-8.5- 111 (2017); Connecticut: Conn. Gen. Stat. Ann. § 54-56d (i)(3) (2016); Florida: Fla. R. Crim. P. 3.212 (2018); Georgia: Ga. Code Ann. § 17-7-130 (2017); Hawaii: Haw. Rev. Stat. § 704-406 (1) (2016); Idaho: Idaho Code Ann. § 18-212 (2000); Illinois: 725 Ill. Comp. Stat. Ann. 5/104-17 (2018); Indiana: Ind. Code Ann. § 35-36-3-1 (2018); Iowa: Iowa Code Ann. § 812.6 (2014); Louisiana: La. Code Crim. P. Ann. Art 648 (2014); Maine: Me. Rev. Stat. tit. 15, § 101-D (2016); Maryland: Md. Code Ann. Crim. Proc. 3-106 (2013); Minnesota: Minn. R. Crim. P. 20-01 (2015); Mississippi: Miss. R. Crim. P. 12.5 (2017); Nevada: Nev. Rev. Stat. Ann. § 178.425 (2017) ("If the court finds the defendant incompetent but New Hampshire: New. Hamp. Rev. Ann. 135-17-a (2017); New Jersey: N.J. Stat. Ann. § 2C:4-6 (2018); New York: N.Y. Crim. Proc. Law § 730.40 (2013); North Dakota: N.D. Cent. Code Ann. § 12.1-04-08 (2013); Ohio: Ohio Rev. Code Ann. § 2945.38 (2016); Texas: Tex. Crim. Proc. Code Ann. § 46B.072 (2017); Virginia: Va. Code Ann. § 19.2-169.2 (2017); Washington: Wash. Rev. Code Ann. § 10.77.086 (2015); West Virginia: W. Va. Code Ann. § 27-6A-2-7 (2007); Wisconsin: Wis. Stat. Ann. § 971.14 (2018).

[16] W. Neil Gowenstein, Lynda E. Frost, Danielle W. Speelman & Danielle E. Therson, *Lookin' for Beds in All the Wrong Places: Outpatient Competency Restoration as a Promising Approach to Modern Challenges*, 22 Psychol. Pub. Pol'y Journal 293, 299 (2016).

[17] Graziani, C., Guzmán, M., Mahometa, M., Shafer, A., *Texas outpatient competency restoration programs* (2015), p. 17. Hogg Foundation for Mental Health available at http://hogg.utexas.edu/project/evaluation-outpatient-competency-restoration.

[18] *See Issue Brief: March 2013. Restoration of Competency to Stand Trial,* Hogg Foundation for Mental Health available at http://utw10282.utweb.utexas.edu/wp-content/uploads/2015/09/Competency-Restoration-Brief.pdf.

[19] *Id.*

[20] *See* Gowenstein et al., supra note 16, at 299.



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

community." ORS 161.365-370; *see also* OAR 309-088-0105 ("Oregon Revised Statutes (ORS) 161.365 and ORS 161.370 recognize that not all criminal defendants who lack fitness to proceed (commonly known as "Aid and Assist" defendants) need to be committed to the State Hospital or remain in jail."). Oregon's community-based competency restoration program allows participants to attempt competency remediation without losing liberty, employment, income from employment or Social Security benefits, and housing. (*See* TR 17-19, 30-31).[21] Participants avoid disruption in continuity of services, treatment or care from community service providers, and receive services in a familiar environment where they less likely to be confused, intimidated, or dysregulated by a correctional environment. In this program, Mr. Collins has developed good attendance habits, complied with program requirements, found not to be a danger to the public. (TR 17-43; testimony of Defendant's caseworker).

The government and Mr. Collins benefits from maintaining a continuum of competency restoration treatment, including outpatient and community-based options. For all these reasons, the Attorney General should consider Oregon's community-based competency restoration program, rather than detention in federal prison thousands of miles from Mr. Collins' home.

## B. Unwarranted and Indefinite Confinement of a Person with Developmental Disabilities Violates Due Process Protections

### 1. <u>Due Process Protections Apply to Commitment Proceedings and § 4241</u>

The paradigmatic liberty interest under the Due Process clause is freedom from incarceration. *Oviatt ex rel. Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). The Supreme Court has long recognized that "Freedom from imprisonment—from government custody,

[21] TR" refers to the transcript of proceedings from Mr. Collins's further competency proceedings held on October 2, 2018, which will be filed with the party's briefing.



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 778 (9th Cir. 2014).

Persons committed solely on the basis of their mental incapacity have a constitutional right to receive such individualized treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition. *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980); *see also Vitek v. Jones*, 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980)); *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972). Absent treatment, an individual could be held indefinitely as a result of mental illness, while those convicted and sentenced need only serve the maximum term for their criminal offense. *Ohlinger*, 652 F.2d at 778.

Ninth Circuit district courts have held that Due Process protections apply to pretrial detainees waiting declaration of fitness to stand trial. *Trueblood v. Wash. State Dep't of Soc. & Health Servs*., 822 F.3d 1037, 1040 (9th Cir. 2016)("Because incapacitated criminal defendants have not been convicted of any crime, they have an interest in freedom from incarceration. They also have a liberty interest in receiving restorative treatment."); *see also Oregon Advocacy Center v. Mink,* 322 F. 3d 1101, 1121 (9th Cir. 2003). The Due Process Clause forbids the government from infringing certain fundamental liberty interests unless the infringement is narrowly tailored to serve a compelling state interest. *Trueblood*, 822 F.3d at 1044.

Districts courts have upheld that Due Process protections apply to § 4241(d). *See, e.g.,* *United States v. Pardue,* 354 F.Supp. 1377 (D. Conn. 1973); *U.S. v. Rudisill*, 2 F.Supp.2d 46 (D.C. 1998). Like Mr. Collins, the defendant in *Purdue* had "not been nor will he in the foreseeable future be able to stand trial on the charges outstanding against him." *Pardue,* 354 F.Supp. at 1381. Given this lack of ability to restore him to competency and the time it took to



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

repeatedly reach this conclusion "reached constitutional dimensions;" there, the court ordered the defendant's release from custody and noted "serious questions of Due Process and cruel and unusual punishment are present." *Id.* at 1382. The *Rudisill* court also noted the parties' interests and the harm to the defendant caused by prison confinement, which are similar to the facts here:

> "The Government has requested that Rudisill be placed in the Federal Prison Hospital at Butner, North Carolina for its determination pursuant to § 4241(d). From the extensive record developed in this case, the Court finds that permitting the Government to place Rudisill in a strange environment without the stabilizing and reassuring presence of his mother would likely cause him severe trauma and might set him back significantly in his recovery."

*Rudisill*, 2 F.Supp.2d at 47. Given the limitations of § 4241(d), the court placed restrictions on the Bureau of Prisons in their placement of Rudisill, including a thirty-day commitment, paying for the travel and lodging of the Defendant's mother, daily visitation, out-of-custody placement beyond thirty days, making clear these restrictions were "binding to the Bureau of Prisons." *Id.*

A review of four federal district court decisions ordering incarceration pursuant to § 4241(d), reveals each court wrestling with Due Process protections as applied to facts that are distinguishable from this case. *See United States v. Shawar*, 865 F.2d 856 (7th Cir. 1989); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990); *United States v. Stanford*, 769 F.Supp.2d 1083, 1089 (S.D. Tex. 2011); and *United States v. Strong*, 489 F.3d 1055 (9th Cir. 2007). Namely, in each of those cases, the court has entered findings of fact regarding the individual's dangerousness, threat to public safety, or lack of an existing community-based alternative to assess competency to proceed with trial.

First, the *Shawar* Court initially noted "commitment proceedings pursuant to statute must comport with Due Process." *Shawar*, 865 F.2d at 859. The *Shawar* decision was also issued one year prior to the promulgation of the ADA's integration mandate, ten years before the *Olmstead* decision, and twenty-nine years before Oregon established community based restoration.



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

However, even then, the *Shawar* Court goes on to correctly find that § 4241 provides the Attorney General with "the ability to seek treatment of incompetent defendants through appropriate state mental health procedures" as well as the authority "to conduct an in-depth evaluation of the defendant to assess the likelihood that he will regain competency and whether he is dangerous." *Id.* at 860-861. While ordering the incarceration of the non-dangerous defendant, there, the Court went on to note the statutory language regarding hospitalization and raised this question, "Admittedly, it is not entirely clear what should happen after the initial commitment period to the non-dangerous individual who will never regain competency." *Id.* at 863. While ordering the incarceration of the non-dangerous defendant, there, the Court noted the statutory language regarding hospitalization and raised this question, "Admittedly, it is not entirely clear what should happen after the initial commitment period to the non-dangerous individual who will never regain competency." *Id.* at 863. Here, the Attorney General has the ability to seek restoration services through the existing community restoration as well as the authority to evaluate whether Mr. Collins is even dangerous, thereby requiring placement in a Bureau of Prisons facility. However, such action has not been taken.

Second, the *Donofrio* decision was reached the very year the ADA passed and prior to the promulgation of clarifying regulations. Similar to *Shawar,* the *Donofrio* Court notes that § 4241 was passed in light of the Due Process protections afforded to the defendant in *Jackson v. Indiana,* 406 U.S. 715 (1972), "which held that an incompetent defendant cannot be constitutionally confined beyond the reasonable period of time required to determine whether a substantial probability exists that mental competency for trial will be attained." *Donofrio,* 896 F.2d at 1302. There, the Court noted that Due Process protections had been met because the statute limits the duration of confinement and any extension may be based on a finding of a



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

substantial risk to himself and to others, pursuant to 18 U.S.C.A. § 4246. *Id.* at 1303. Here, Mr. Collins has not been found a substantial risk to himself, and it is unclear for how long the Attorney General plans to place any limitations on a prospective stay in Bureau of Prisons facilities.

Third, the *Stanford* Court first notes the Due Process protections that apply to the commitment process. *United States v. Stanford*, 769 F.Supp.2d at 1086. However, the Court goes on to order detention based on these following fact, "Stanford is a flight risk and that no combination of conditions of pretrial release can reasonably assure his appearance at trial." *Id.* Here, no such flight risk or other risk to the public has been presented that justify Mr. Collins' pre-trial incarceration.

Fourth and finally, the Attorney General has argued that the *Strong* decision to mandatorily confine a federal defendant does not violate Due Process. However, there, the pretrial defendant was charged with assault with a dangerous weapon and assault resulting in serious bodily injury. *Strong,* 489 F.3d at 1057. Further, the trial court had initially permitted placement in an out-of-custody treatment facility, only ordering detention after the defendant violated release conditions and was found a safety risk. *Id* at 1058. Most critically, the *Strong* Court held that the federal statute complies with Due Process because § 4241(d) "provides a *flexible mechanism* through which the defendant could gain early release—namely, through regaining competency prior to the conclusion of the four-month period, *or through an appropriate medical determination that there is no 'substantial probability' that the defendant could be restored to competency* in the 'foreseeable future. *Id.* at 1062 (emphasis added). In contrast, here, three qualified experts agree that Mr. Collins is not competent and one expert – so far – has further concluded that he is not restorable due to an organic brain condition that is



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

unchanging. Def. Ex. 1 (doctor evaluations). Because of all these uncontroverted facts, the nature and any duration of confinement in an out-of-state prison violates Mr. Collins' Due Process rights.

2. <u>The Government Lacks a Compelling Interest to Deprive Mr. Collins of Liberty</u>

There is no clear government interest in forcing incarceration upon a defendant who is not competent, enrolled in a state community restoration program, and may not restorable due to the nature of their disability. Significantly, national experts have also routinely determined that outpatient and community-based restoration programs and services are the best practice. *See* Gowenstein *et al.*, *supra*, at 299. These same experts go on to provide a factual basis for why community restoration is also consistent with both the government's interests and individual liberty.

As a pretrial detainee, Mr. Collins is entitled to "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2002). Here, the government deprives Mr. Collins of his fundamental liberty interests protected by the Due Process Clause through incarceration that is not "narrowly tailored to serve a compelling state interest." *Lopez-Valenzuela*, 770 F.3d at 781.

3. <u>Mr. Collins Will Suffer Irreparable Harm if He is Incarcerated</u>

Mr. Collins will suffer irreparable harm if he is deprived of his right to Due Process. An "alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal citations omitted); *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")



Disability Rights Oregon
511 SW 10th Avenue, Suite 200
Portland, OR 97205
(503) 243-2081

> It is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.

*Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983).

Here, Mr. Collins would not only be deprived of his liberty but also sent thousands of miles away losing his newly-established community supports. This harm is untenable in light of the lack of compelling government interest in imposing detention.

## IX. CONCLUSION

For the foregoing reasons, mandatory pre-trial detention of Mr. Collins in an out-of-state Bureau of Prisons facility without an individualized determination of the most integrated setting violates both the federal integration mandate and Due Process protections. The statute—18 U.S.C. § 4241(d)—can be harmonized with both the Due Process clause and the ADA's mandate to administer federal programs and activities in the most integrated setting appropriate for the needs of individuals with disabilities. The determination of an appropriate placement for an individual's restoration to competency services must be determined in light of the federal government's obligation to administer its programs in the most integrated setting appropriate to the needs and civil liberties of individuals with disabilities.

Respectfully submitted, this 19th day of October, 2018.

DISABILITY RIGHTS OREGON
/s/ Emily Cooper
Emily Cooper, OSB # 182254
ecooper@droregon.org
511 SW 10th Avenue, Suite 200
Portland OR 97205
*Attorney for Amicus DRO*

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**UNITED STATES OF AMERICA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**v.**<br><br>**LAWRENCE COLLINS,**<br>**Defendant.** | **Case No. 16-cr-00352-HZ-02**<br><br>**PROPOSED ORDER GRANTING MOTION TO FILE AN *AMICUS CURIAE* BRIEF** |

Upon consideration of Disability Rights Oregon's Motion for Leave to File an *Amicus Curiae* Brief, it is hereby:

ORDERED that Proposed Amicus' Motion is GRANTED, and

ORDERED that Disability Rights Oregon's proposed *amicus curiae* brief is accepted into the record.

IT IS SO ORDERED.

____________________________________ Dated: ________________

Hon. Marco A. Hernández
United States District Judge

Submitted by:

________________________________

Emily Cooper, OSB # 182254
Disability Rights Oregon



Disability Rights Oregon
511 SW 10th Avenue, 2nd Floor
Portland, OR 97205
(503) 243-2081